IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRENDA RYBARIK,                          )
                                         )
                 Plaintiff,              )
                                         )        Civil Action No. 12-515
        v.                               )
                                         )        **ELECTRONICALLY FILED**
MICHAEL J. ASTRUE,                       )
Commissioner of Social Security,         )
                                         )
                 Defendant.              )


<u>**MEMORANDUM OPINION**</u>


I.    **INTRODUCTION**

Brenda Rybarik ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking

review of the final determination of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her application for disability insurance benefits ("DIB") under Title II

of the Social Security Act, 42 U.S.C. §§ 401 – 433 ("Act").  This matter comes before the Court

upon cross-motions for summary judgment.  (ECF Nos. 9, 12).  The record has been developed

at the administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment

will be DENIED and Defendant's Motion for Summary Judgment will be GRANTED.

II.   **PROCEDURAL HISTORY**

Plaintiff filed for DIB with the Social Security Administration on April 22, 2008,

claiming an inability to work due to disability beginning March 7, 2006.  (R. at 128 – 32)[1].

Plaintiff was initially denied benefits on February 20, 2009.  (R. at 70 – 80).  A hearing was

---

[1] Citations to ECF Nos. 6 – 6-12, the Record, *hereinafter,* "R. at __."

scheduled for June 7, 2010.  (R. at 34 – 56).  Plaintiff appeared to testify, and was represented by

counsel.  (R. at 34 – 56).  A vocational expert also testified.  (R. at 34 – 56).  The Administrative

Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on July 2, 2010.  (R. at 16 –

30).  Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which

request was denied on March 23, 2012, thereby making the decision of the ALJ the final decision

of the Commissioner.  (R. at 1 – 3).

Plaintiff filed her Complaint in this Court on April 19, 2012.  (ECF No. 1).  Defendant

filed his Answer on August 20, 2012.  (ECF No. 5).  Cross-motions for summary judgment

followed.

## III.    STATEMENT OF THE CASE

In his decision denying DIB to Plaintiff, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2012;
2. The claimant has not engaged in substantial gainful activity since March 7, 2006, the alleged onset date;
3. The claimant has the following severe impairments: degenerative disc disease and facet hypertrophy of the lumbar spine with associated radiculopathy, carpal tunnel syndrome, a tremor, migraines, a bipolar disorder, an anxiety disorder, and a past history of alcohol abuse;
4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except for work which requires lifting and carrying more than 10 pounds occasionally, standing/walking more than 4 hours in an 8-hour workday, more than occasional bending, kneeling, stooping, crouching, balancing or climbing, more than simple routine repetitive tasks, more than simple, work-related decisions, any exposure to a production rate pace, or more than infrequent changes in work setting.  In addition, the claimant must be afforded an option to alternate to sitting every ½ hour for at least 10 minutes;
6. The claimant is unable to perform any past relevant work;
7. The claimant was born on July 9, 1960, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

> The claimant attained age 50 within 6 months of the date of the hearing, which is defined as an individual who is "closely approaching advanced age;"
> 8. The claimant has at least a high school education and is able to communicate in English;
> 9. Transferability of job skills is not material to the determination of disability because use the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills;
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and,
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 7, 2006, through the date of this decision.

(R. at 18 – 30).

## IV.   STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999). "Overall, the substantial

evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability

unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's

decision cannot be affirmed on a ground other than that actually relied upon by the agency in

making its decision. In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194

(1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of

this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F. 3d 34, 44, n. 7

(3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

V.     DISCUSSION

Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred by:

(1) failing to attribute specific limitations to her migraines and carpal tunnel syndrome;

(2) failing to give her Clinical Psychological Disability Evaluation adequate weight; and

(3) failing to credit all of her subjective complaints of pain and limitation.  (ECF No. 10 at 2, 4,

6).  Defendant counters that specific limitations were attributed to Plaintiff's carpal tunnel and

migraines, and that they were fully accommodated, that the evaluation at issue was inconsistent

with the medical record and an overestimation of Plaintiff's degree of limitation, and that

Plaintiff's subjective complaints were not adequately supported by objective medical evidence.

(ECF No. 14 at 1 – 5).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final

determination to provide a reviewing court with the benefit of the factual basis underlying the

ultimate disability finding.  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v.

Chenery Corp.*, 318 U.S. 80, 94 (1943)).  The ALJ need only discuss the most pertinent, relevant

evidence bearing upon a claimant's disability status, but must provide sufficient discussion to

allow the court to determine whether any rejection of potentially pertinent, relevant evidence was

proper.  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v.

Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).  In the present

case, the ALJ adequately met his responsibilities under the law.

   A.  <u>Severe Impairments</u>

Plaintiff first claims that the record shows an ongoing history of severe headaches, and

that Plaintiff complained of said headaches at numerous times within the medical record.  (ECF

No. 10 at 3).  Similarly, Plaintiff also allegedly complained of symptoms stemming from her

carpal tunnel syndrome, including loss of strength in her hands, difficulty opening jars, and difficulty with writing.  (ECF No. 10 at 3 – 4).  According to Plaintiff, the ALJ correctly concluded that Plaintiff experienced severe impairment in the way of migraine headaches and carpal tunnel syndrome, but incorrectly failed to include limitations resulting from these impairments in his residual functional capacity assessment ("RFC") and hypothetical to the vocational expert.

First, the Court notes that Plaintiff's brief does not itself point to any specific limitations stemming from Plaintiff's severe headaches.  Plaintiff did complain of headaches in July, September, October, and November, 2008, March and December, 2009, and March and April, 2010; however, during visits with her primary care physician Philip Gelacek, M.D., Plaintiff also denied experiencing frequent or recurring headaches on numerous occasions, including April, May, and November, 2008, February, June, and September, 2009, and, January 2010.  (R. at 192, 195, 201, 205, 208, 263 – 64, 273 – 74, 346, 350, 364, 376, 436, 442).  While, in her own self-reports, Plaintiff does mention that her migraine pain affects her ability to concentrate and complete some tasks, her headache history is clearly inconsistent.  (R. at 168 – 83).

Plaintiff did not indicate that she suffered from headaches in her disability report.  (R. at 154 – 64).  Plaintiff also failed to mention headaches or migraines to Lloyd K. Richless, M.D. during her physical evaluation for the Bureau of Disability Determination on December 17, 2008.  (R. at 279 – 81).  Dr. Richless diagnosed only chronic low back pain, bipolar disease, and tremor; he found no neurological deficits.  (R. at 279 – 81).  He made no limitations findings regarding headaches.  (R. at 277 – 78).  A Physical RFC completed by state agency evaluator Harry Henry on February 12, 2009, contained no such limitations.  (R. at 321 – 27).  Dr. Gelacek also made no mention of specific limitations attributable to Plaintiff's alleged headache pain.

The ALJ attempted to accommodate all of Plaintiff's medically established functional limitations in his RFC and hypothetical, including restrictions requiring Plaintiff to avoid more than simple routine repetitive tasks, more than simple, work-related decisions, any exposure to a production rate pace, or more than infrequent changes in work setting.  Assuming her constant headaches affected her ability to concentrate, Plaintiff fails to demonstrate why the limitations in the RFC and hypothetical did not accommodate this problem.  No other specific limitations contained in the medical evidence were brought to light by Plaintiff.  As such, the Court finds that migraines were adequately accommodated by the ALJ.

Similarly, Plaintiff's medical record is sparse with respect to her carpal tunnel syndrome. Plaintiff did claim that she experienced some numbness and weakness in her hands.  (R. at 40 – 41).  On March 27, 2009, a nerve conduction study was performed by Mark Mitros, M.D. to determine the severity of Plaintiff's carpal tunnel syndrome.  (R. at 367 – 68).  At the conclusion of the study, Dr. Mitros diagnosed mild median neuropathy at the right wrist (carpal tunnel syndrome), mild median neuropathy at the left wrist (carpal tunnel syndrome), very mild right ulnar neuropathy at the wrist, and very mild left ulnar neuropathy at the wrist.  (R. at 367 – 68). Some sensation loss was noted in the fingertips, and there was some restriction in range of motion.  (R. at 367 – 68).  Dr. Mitros made no mention of functional limitations.

Dr. Gelacek indicated in March 2009, that Plaintiff showed signs of carpal tunnel syndrome and had markedly decreased grip strength in her right hand.  (R. at 373).  As early as July 15, 2004 – almost two years prior to Plaintiff's last day of full-time work – Dr. Gelacek noted Plaintiff suffered from carpal tunnel syndrome and suggested the use of splints for treatment.  (R. at 416).  However, little else was found in the record regarding functional limitations, and Plaintiff sought no other treatment.  Plaintiff argues that she did not seek more

aggressive treatment for her carpal tunnel syndrome because of a loss of insurance coverage; however, she provided no evidence that she lost this coverage in the two years prior to her last day of full-time work.

The Physical RFC completed by state agency evaluator Harry Henry on February 12, 2009, following a review of Plaintiff's medical record, did not include a diagnosis of carpal tunnel syndrome. (R. at 321 – 27). Mr. Henry noted that the record showed Plaintiff's upper extremity and grip strength to be normal. (R. at 321 – 27). As with her headaches, Plaintiff failed to mention carpal tunnel syndrome to Dr. Richless during her physical examination for the Bureau of Disability Determination. (R. at 277 – 81). Additionally, Plaintiff did not mention her carpal tunnel syndrome as a limiting impairment in her disability report, (R. at 154 – 64).

As with her migraine headaches, the ALJ cannot accommodate limitations which do not exist, or which cannot be found in the medical record. No specific functional limitations were provided by any of Plaintiff's medical sources with respect to her carpal tunnel syndrome, and the ALJ limited the amount of weight Plaintiff could lift with her arms in his RFC and hypothetical. The Court finds that the ALJ's finding was supported by substantial evidence and will not remand for further consideration of Plaintiff's headaches carpal tunnel syndrome.

### B.  *Clinical Psychological Disability Evaluation*

Plaintiff claims that the ALJ failed to give proper weight to a finding of "marked" limitation with respect to the ability to respond appropriately to work pressures in a usual work setting. (ECF No. 10 at 4 – 6). Julie Uran, Ph. D. performed a Clinical Psychological Disability Evaluation of Plaintiff on January 8, 2009. (R. at 299 – 307). During the examination, Plaintiff described experiencing hyperactivity, inattentiveness and difficulty with concentration, poor organization, forgetfulness, daily depression and loss of interest or pleasure in most activities,

sleeping and eating disturbance, fatigue, feelings of worthlessness and guilt, obsessive thoughts, anxiety, and manic episodes.  (R. at 299 – 307).

Dr. Uran observed Plaintiff to exhibit intermittent shaking, restricted mood, flat affect, and poor immediate memory.  (R. at 299 – 307).  However, Plaintiff also exhibited full alertness and orientation, good hygiene and grooming, cooperativeness, coherent and spontaneous speech, normal and relevant thought processes, average intelligence, adequate learning capabilities, adequate vocabulary, no difficulty with recalling meaningful and recent events, ability to recall at least three digits forward and four digits backward, no difficulty with impulse control, appropriate social judgment, good capacity for insight, and a good narration of her personal history.  (R. at 299 – 307).  Plaintiff received a global assessment of functioning[2] ("GAF") score of 55.  (R. at 302).  Plaintiff was capable of managing her own funds, but had a poor prognosis with respect to higher level functioning and personality integration.  (R. at 302).  In the section including specific limitations findings, Dr. Uran's notes show that Plaintiff's degree of limitation with respect to responding appropriately to work pressures in a usual work setting was "marked." (R. at 306).

The ALJ accorded this finding lessened weight.  He cited to Dr. Uran's GAF score of 55, indicating only moderate limitation, and less severe observations in the rest of her disability evaluation.  (R. at 27 – 28).  The ALJ also cited to an initial assessment by Allegheny Associates in Psychiatry in May, 2008, at which time Plaintiff was assessed a GAF score of 60.  (R. at 424). Further, in a Mental RFC completed by state agency evaluator Edward Jonas, Ph. D. on February

---

[2] The Global Assessment of Functioning Scale ("GAF") assesses an individual's psychological, social and occupational functioning with a score of 1 being the lowest and a score of 100 being the highest. The GAF score considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *American Psychiatric Association: Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) 34 (4th ed. 2000).  An individual with a GAF score of 51 – 60 may have "[m]oderate symptoms" or "moderate difficulty in social, occupational, or school functioning."  *Id.*

20, 2009, in which Plaintiff was diagnosed with affective disorders, anxiety-related disorders, and substance addition disorders, Plaintiff was found to be capable of engaging in full-time work.  (R. at 328 – 31).  Dr. Jonas found marked limitation only in Plaintiff's ability to understand, remember, and carry out detailed instructions.  (R. at 328 – 31).  Plaintiff was otherwise only moderately to not significantly limited.  (R. at 328 – 31).

Finally, the ALJ provided within his RFC and hypothetical that Plaintiff's work should not involve more than simple, routine, repetitive tasks, more than simple work-related decisions, any exposure to production rate pace, and no more than infrequent changes in routine work settings.  (R. at 21).  Plaintiff fails to explain why this did not accommodate Plaintiff's limitation, even if she experienced "marked" limitation in her ability to respond appropriately to work pressures in a usual work setting.  Moreover, the evidence cited by the ALJ suggests that Plaintiff's limitation was not as severe as found by Dr. Uran.  The Court, therefore, finds the ALJ's conclusion to be supported by substantial evidence.

### C.  _Subjective Complaints_

Lastly, Plaintiff asserts that the ALJ did not give proper credence to Plaintiff's subjective complaints when concluding that she was not as functionally limited as claimed.  (ECF No. 10 at 6 – 9).  The Court need not go into depth when rejecting this argument.  Even assuming the subjective complaints noted by Plaintiff in her brief regarding limitation in her day-to-day functioning were given full weight, Plaintiff does not demonstrate that any of these complaints rise to the level of functional limitations deserving of inclusion in the ALJ's RFC or hypothetical.  Therefore, these complaints have no effect on the ultimate determination.  Consequently, the ALJ's decision will not be sent back for reconsideration of these subjective complaints.

**VI.     CONCLUSION**

Based upon the foregoing, the Court finds that substantial evidence supports the decision of the ALJ finding Plaintiff not disabled under the Act.  Accordingly, Plaintiff's Motion for Summary Judgment will be denied; Defendant's Motion for Summary Judgment will be granted; and, the decision of the ALJ will be affirmed.

An appropriate Order follows.


<u>/s Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:     All counsel of record.